Our next case for argument is 22-1491, Perciavalle, did I say that right? Okay, Perciavalle v. McDonough. Mr. Lopez-Morales. Good morning, your honors, and may it please the court, Cesar Lopez-Morales on behalf of Mr. Perciavalle. This appeal involves a highly fractured decision of the Embank Veterans Court. That decision affirmed the board's denial of my client's request for revision of his disability rating in 1971. Well, I certainly agree, highly fractured. There's an awful lot of opinions and I had trouble sort of figuring out, but it seems like there's a clear majority overall that the board made an error, is that fair? That's right, your honor, multiple errors, if I may add that. And then, well, I guess it depends on who you ask as to what the error was, but they made an error. And then there's this question about whether that error was harmless or not. There are three judges that said it was harmless. Is that right? So your honor, there are two. So you're exactly right, Chief Judge Moore, that a majority, six judges of the Embank Veterans Court agreed that Mr. Perciavalle had a legally cognizable Q claim that was never adjudicated by the board. So you have the error of rewriting the claim and you do have the error that the basis for the denial of the claim was wrong because there had been no change in the interpretation of a statute or regulation. Then when it comes to harmless error, you actually have two judges, Judges Lohrer and Jayquith. Three for two different reasons, right? That's right. Yeah, okay. Oh, I'm sorry, go ahead. No, and those two judges basically did what we would consider was a full-on analysis of the unaddressed Q claim. By looking at the relevant regulations, the diagnostic codes, conceitedly, they examined the medical records in 1971 and made a determination. And then you have Judge... I don't understand, and maybe how you count the three judges who disagreed with the majority holding in determining what the relief should be. I just don't understand that. You had six judges who say it's error and then all of a sudden in determining the relief, you count three judges who say it was an error. How's that possible? Your Honor, we're not saying that. So you're exactly right that there's the opinion by Chief Judge Bartley that says... I guess I'm asking you, isn't that itself an error? To be counting the three judges who disagreed with the majority in determining what the relief should be? How can it be that when you get to that stage, all of a sudden you disregard the majority holding that was error here? That's exactly... And you have three judges who say, well, we wouldn't grant any relief because there was no error. You can't count those votes that way. I completely agree, Your Honor. Now I understand your point, and that actually goes to the principal argument that we've presented here, is that once the... My hardest choice here is, who do I send this back to? I mean, technically I have to send it back to the Veterans Court, but I think it should go all the way back to the board. Do you think it should go back to the Veterans Court for them to somehow reassess the harmless error standard, or do you agree it should go back to the board to make fact findings in the first instance on this cute claim? Your Honor, I agree. It should go back to the board for several reasons. One is fact finding. Another one, as Judge Dyke pointed out, you can't count the Judge Allen judgment concurrence for purposes of the remedy. You already have a holding that Mr. Percivali had a viable, legally viable claim that was never adjudicated, and the Veterans Court and this court have already stated time and again that when there is a properly raised Q claim before the board and the board has failed to pass on it, the proper remedy is for the Veterans Court to remand that claim back to the board. So, and that's... Counselor Morales, what's our standard of review here? So, Your Honor, our standard of review is de novo review of all questions of legal errors. So, if it's de novo, does it matter that we have this fracture in the opinions below? Your Honor, it doesn't matter for purposes of our argument because a sixth judge majority already concluded there was error. Those errors are subject to de novo review, but when it comes to the remedy, then because there is an unaddressed Q claim under this court's precedence, such as in Andre versus Principi, Ledford versus West, the Veterans Court's own precedence in Lamb versus Speak and many others, the only course of action there when you have an unaddressed Q claim is to send it back to the board for adjudication. Well, I mean, that's not quite true. I mean, there could be a harmless error determination, but you don't have a majority here making a harmless error determination. And even the three who found harmless error, the reasoning of those seems wrong. Your Honor, I agree with that. That said, with respect to the second point I would make is the harmless error determination, of course, it's cabined by the Veterans Court's own jurisdiction. And so that inquiry has to be consistent with- They couldn't make a harmless error determination if they said, look, we've looked at this record and there's no way on this record that the board could find Q. But I don't read any of either of the two harmless error decisions as saying that. We would agree with that, Your Honor. I guess the only caveat I would make is when there is no opinion by the board on the specific Q claim that has been raised, the Veterans Court doesn't have jurisdiction to reach the merits of that Q claim. I don't think that's right. I think that the harmless error requires them to look at the entire record, even though our decision hasn't been rendered on that. And they could say, based on this record, there's no way that the board could possibly find Q. It seems to me that's permissible, but they didn't do that. I agree, Your Honor. They did not do that. You agree they didn't do that, but do you agree that they could do that? Our position is that they could not have. And Judge Dyke, for example, I'm guessing you're relying on cases like Tadlock and many other cases that do empower the Veterans Court in certain circumstances to look at the record and make a determination. But our point is, Andre, I encourage Your Honors to look at Andre versus Principi, is very clear that when there's an unaddressed Q claim, the Veterans Court just doesn't have the board decision, which is a statutory requirement, to then look at the record and adjudicate the claim on its own. So our position is there was no determination, but in any event- Are you saying that harmless error can't apply in a Q case? What's the basis for that? No, Your Honor, it certainly applies. And I apologize if I'm not being clear. The harmless error determination certainly applies in a Q case where the Q claim, the specific claim, has been adjudicated by the board. And in that circumstance, the Veterans Court does have the authority to look at the record. What's the basis for saying harmless error doesn't apply where there has been no decision? As long as the proper standards apply. The Veterans Court looks at the record and says, well, there's no possible way here that anybody on this record could find harmless error. Isn't that exactly what they're supposed to do under the harmless error standard, is to say, well, there's no way that this could come out differently, so we're not remanding it. So, Your Honor, it depends on what the analysis would be. So when there is no board decision, the Veterans Court just doesn't have the jurisdiction to make that harmless error analysis. Why not? As recently- The harmless error statute says, you know, is general, it says harmless error is to be applied in every case, and the Supreme Court has said that, in every case. Why are Q cases different? I don't think it's about the Q case, Your Honor. I think it's about the Veterans Court's authority. So the obligation to take account of prejudicial error presupposes that the Veterans Court has the authority to take account of that prejudicial error. And the only basis for the Veterans Court's authority to review a claim, whether it's on the merits or as part of the harmless error inquiry, is that there has been a board adjudication on that claim. I certainly understand your argument, but do you have to win, vis-a-vis Judge Dyke's questions, do you have to win that the Veterans Court can never review harmless error in a Q claim to prevail in this case? Because I ask that, because I think in this particular case, you could argue a narrower point that would leave the bigger question for a later day, which is in this case, the Veterans Court would have to review the medical records and determine whether they clearly show arthritis or not, and that's clearly a fact-finding that nobody made that is not in the nature of a no reasonable person could conclude harmless error concept here. So do you have possibly a narrower ground that doesn't require us to decide the bigger question? We do, Your Honor, and we do make that point very clearly in our briefs, is that, and footnote four of Andre makes that very point, when a Q claim, as here, rests on factual allegations such as an examination of the medical records. So your view of Tadlock, as I understand it, isn't that there can't be a harmless error analysis, is that the board doesn't have the authority to make specific narrow fact-findings in the first instance about this kind of matter. That's exactly right, Your Honor. I'm happy to address what we think is the key legal error that goes to the crux of the case, which is the basis for the board's denial as a matter of law. I think that can be addressed very quickly. Recall that, according to the board, Mr. Percivali's Q claim. I think we've already won on that. You've already won, right? I mean, there's a majority of the Veterans Court that says you're right about that. That's right, Your Honor. And we're happy for this court to affirm that. There are a lot of other cases where that question is coming up, and at least one of the judges disagrees with that view. So there's a little bit of confusion in the Veterans Court. But we're exactly right, that we're right as a matter of law, and we're only asking this court to affirm that portion, and then, as Chief Judge Moore pointed out, to remand it back to the board for adjudication of Mr. Percivali's actual Q claim. Is there any reason why we should remand it back to the Veterans Court? We don't think so, Your Honor. For the reasons I pointed out earlier. Are we constrained in any way in sending it back to the board? Your Honor, I guess the only reason why you would be constrained is because you already have a majority of the court saying that there was no adjudication of the Q claim. And our position is that it is up to the board to make the initial fact-finding, to evaluate the medical records, and that authority belongs to the board by statute, as Chief Judge Moore pointed out. Your argument, let me see if I have it right. It's not that we're constrained, it's that we're compelled to send it back to the board. That's exactly right, Your Honor. And our request is for this court to vacate the judgment below and direct the Veterans Court to remand the case back to the board for adjudication in the first instance of Mr. Percivali's actual claim. So, if there are no further questions, I'm happy to reserve the remainder of my time for rebuttal. Okay, thank you, counsel. Counsel, how do I say your name? Mr. O. Mr. O, please proceed. Thank you, Your Honor. And may it please the court. I think the sort of linchpin- Isn't it clear that the Veterans Court doesn't know how to count here? I mean, there's a majority decision saying there was error here, and then when it gets to relief, they count the dissenters from that proposition in determining what the relief should be. How can that possibly be right? Judge Dyke, I will grant you that the Veterans Court's decision is a bit confusing and fractured, but let me present our position as to how this court can affirm the Veterans Court's judgment. Number one- But just before you do that, just to answer my- How could you count the dissenters from a majority decision in determining relief? I think what they did was they came out with a six-judge majority as to what the ultimate judgment would be, meaning the ultimate outcome on relief. But you are correct, Judge Dyke, that there were six judges that took the view that the board misconstrued Mr. Percivali's statement. And you're not challenging that? I actually am challenging that, Your Honor, and that's sort of the- Were you appealed in this case? You appealed that? No, no, we haven't, but this court's jurisdiction allows this court to review whether the Veterans Court exceeded its jurisdictional authority. I know we can review it, but have you challenged it? No, no, I mean, we believe the court can circumscribe jurisdiction sui sponte, so analyzing the question of whether the Veterans Court exceeded its jurisdiction- I don't know that that's right. We can decide whether we have jurisdiction sui sponte, but do we really have the authority to decide whether the lower tribunal did? It's an interesting procedural question, and I'll tell you why, is because we got the judgment that we're defending, and so it would be weird to be appealing a judgment- Right, that was the point I was- So, I guess, I mean, this raises a theoretical question, right? I mean, for us, it's- Well, actually, it feels very practical in this case. Well- Not so much theoretical. We got a judgment, which is in the VA's favor, that I don't think we can appeal, and then on the backside of that, we have what we believe was an overreach by the Veterans Court as to analyzing the scope of the CUE claim below, because the board made a finding as to what the CUE claim was, and we believe that the Veterans Court then did a jurisdictional overreach by- We've kind of acknowledged that that finding was, let's say it's incorrect, the board's finding. Why don't you go back to what's the outcome here? Can we remand this to the board? And if so, should we? And if so, why? This is assuming we don't prevail. I take a judgment. Then where would it go? That's a good question. I mean, in my mind, it would still- The board has yet to make any type of decision as to the arthritis? We would disagree with that. No, so that part's true.  is that it misconstrued, Mr. Przewalski. We think they- That's another issue. That's another issue, right. But you can see that the board never had made a decision as to the disability. As to the medical records, correct. That's correct. We agree that there- If we were to send it back, we'd send it back on that point for the board to make that evaluation. I think there's two elements here because Mr. Przewalski's claim is number one, based upon an understanding of the law as it existed in 1971. He hasn't proven that. What all he's done is- That's another issue. I'm talking about the action of the board. If the only question left is about the medical records, I do think that probably would have to go back to the board, but I would submit that's not the only question. So help me understand what your problem is with the majority holding. How did the Veterans Court lack jurisdiction to make a determination of whether the board made an error here? The board made a finding as to what Mr. Przewalski's CUE motion was. That required the board to analyze the underlying record and say, this is what Mr. Przewalski is alleging. He's alleging, or he's arguing, that the law was clear in 1971 and it appears to be based on retroactivity. Okay, but the CABC majority said, no, that's not what his claim was. He was saying that even in 1971, under the laws that existed then, I win. And so why is it impermissible for the Veterans Court to make such a determination to analyze what the claim is and find that the board made an error in construing the claim? Because the board actually addressed that issue. That's our central position. Is the board actually addressed the issue that Mr. Przewalski was raising, that the law was clear in 1971? And on APP? But that's a, first of all, that's a fact question. I agree. Which is beyond our jurisdiction to determine. But that's exactly what the Veterans Court is supposed to do. They look to see what the claim is and they decided that the board made a mistake in characterizing the claim. How do they lack jurisdiction to do that? I think the problem is the procedural posture we're in, but I don't think that abdicates this court's role to actually review whether the Veterans Court exceeded its jurisdictional authority. Help me understand. How do they exceed their jurisdiction by saying that the board mischaracterized the claim? Yes, yes, Your Honor, because the board actually didn't mischaracterize the claim. Well, but that's. I understand. Judge Teich, this, look. Come on, that's not a jurisdictional issue. Judge Teich, I understand. This is a confusing decision, but I do think there is a way we can do this, which is, number one, the court has a jurisdictional statute. The court is a check on the Veterans Court to determine whether they exceeded their jurisdictional authority. Suppose I agree with that. What's the jurisdictional issue? How do they exceed their jurisdiction? APPX 70, the board addresses Mr. Persiavalli's claim exactly as Mr. Persiavalli presented it, and then the Veterans Court. But that's just saying they made a mistake. That's not a jurisdictional issue. Well, just to finish the point, the Veterans Court comes in and says, you didn't address this claim, and the board clearly did. Can I, let's just, if we turn to APPX page 70. You're asking us to redetermine the factual determination made by the Veterans Court that said he did raise the claim. No. The board said he didn't, and now you're asking us to look at his claim before the board. Okay, Judge Teich, all I'm asking the court to do is, to me, it's clear on the page of APPX 70 that the board addressed Mr. Persiavalli's claim exactly as Mr. Persiavalli raised it. He said, it characterized Mr. Persiavalli's claim as his claim. So what? That's not our job. That's not a jurisdictional issue. You're saying that the Veterans Court made a mistake in analyzing the claim. You know, we've said repeatedly that that's a fact determination that they made. They made the fact determination. That's within their jurisdiction. Why did they make a jurisdictional error? All right, Judge Teich. I mean, that's the procedural route we would take to take this Veterans Court judgment and have it affirmed. But let me just offer a position here. Mr. Persiavalli, in order to establish CUE, number one, has to establish that the law was clear in 1971. He hasn't done that. So one way to think about it, and maybe this is an alternative route, is how do you get there, right? Because this court also has to take due account of prejudicial error. So we've presented our best arguments as to what the state of the law was in 1971. We are going to cite the VA General Counsel's opinion in Esteban. They're gonna cite Wolfe and Lyles. Is that enough to say, with absolute clarity under CUE standards, again, the CUE burden to establish the clarity of the law, the law then in effect in 1971 is extraordinarily high. If you send this back, is that enough to say this law was clear in 1971? I don't think it is. And I think an alternative way to get there is say it's a prejudicial error analysis. You need to establish the clarity of the law in 1971. You can't do it. There's nothing that has been raised throughout this appeal or below that would suggest the law was clear on this issue in 1971. I guess that's the alternative route. The court's not accepting our primary route. That's essentially our argument. We respectfully request the court affirm the judgment of the Veterans Court. Mr. O, Mr. Lopez-Morales. So a couple of points on Roboto, Your Honor. The government concedes that the board did not address the CUE claim when it comes to applying the relevant regulations and diagnostic codes to Mr. Percivali's medical records. And the government conceded that that determination would have to be made by the board. So I think there is common ground and agreement on that. As to the last point, the 1997 general counsel opinion could not have been clearer when it said that the plain terms of the regulations compelled the reading that separate evaluations and ratings needed to be. But why are they asking us to decide that question? That's what the board is supposed to do. They'll determine, if we really hand it to the board, they'll determine whether in 1971 there was a clear and unmistakable error or there wasn't, considering the state of the law in 1971. That's their job. I could not agree more, Your Honor. I was only responding to the government's position that this court should decide that, but I completely agree that it is for the board to adjudicate that as part of the merits of the CUE claim itself. If there are no further questions. Okay, I thank both counsel. This case is taken under submission.